**FIRST AMENDED COMPLAINT**

FILED
2025 JUL 29
CLERK
U.S. DISTRICT COURT

Ryan Lee
Pro Se Plaintiff



IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

**First Amended Complaint**

**RYAN LEE**

Plaintiff,

vs.

**CAPITAL ONE BANK (USA), N.A.;
JOHNSON MARK LLC; ABC LEGAL
SERVICES**.

Defendant(s).

Case No.:   2:25-cv-00540-DBP

Judge:

**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**

**INTRODUCTION**

1.  Plaintiff brings this action under:

    a.  The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq.;

    b.  The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.; and

    c.  Utah common law for:

        i. Tortious interference and retaliatory abuse of process, and

        ii. Invasion of privacy and unauthorized disclosure.

1

**PRELIMINARY STATEMENT**

2. This case arises from a deliberate abuse of legal process and credit reporting systems, carried out in a manner designed to cut off Plaintiff's rights, coerce payment without investigation, and bypass fundamental due process protections.

Beginning in May 2025, Defendants attempted to serve Plaintiff at an address he had not used in over five years—an address he had expressly disclaimed in writing. On June 2, 2025, Plaintiff filed a formal complaint with the Consumer Financial Protection Bureau (CFPB), directly notifying Capital One and its agents that the credit line was needing investigation and to be verified for accurate information. Additional notices followed on June 7 and June 10, confirming both the incorrect address and Plaintiff's dispute of the underlying tradeline.

Rather than correct the record or conduct proper service, Defendants proceeded as though no objections had been raised. On July 1, 2025—just hours after Plaintiff escalated his CFPB complaint to federal agencies—Defendants filed a sworn affidavit falsely certifying service at the same disclaimed address. That affidavit was submitted to court on July 2, 2025, triggering a 21-day response window Plaintiff could not reasonably meet.

Simultaneously, the account continued to be reported as a charge-off by Capital One Bank (USA), N.A., the identified furnisher on Plaintiff's Equifax credit report. Despite certified disputes submitted on June 10, 2025, Capital One Bank (USA), N.A. failed to conduct a reasonable investigation or mark the tradeline as disputed, in violation of its duties under the Fair Credit Reporting Act (FCRA).

2

The lawsuit itself was filed by Capital One, N.A., a related entity that—upon information and belief—had no legal ownership of the account. No assignment, transfer, or servicing agreement has been disclosed to justify its standing to sue. The filing of legal action by an entity lacking ownership, timed against known disputes and address objections, supports an additional claim for abuse of process and calls into question the validity of the default procedure pursued.

Despite multiple good-faith attempts to resolve the matter administratively—including regulatory complaints and written address correction—Defendants ignored all notices and advanced legal and credit reporting actions.

This action seeks compensatory and punitive damages under the FCRA, FDCPA, and state tort law, and requests injunctive and declaratory relief to prevent continued procedural abuse by creditors and collectors who act without standing or due diligence.

## JURISDICTION & VENUE

3. This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the FDCPA (15 U.S.C. § 1692 et seq.) and the FCRA (15 U.S.C. § 1681 et seq.).

4. This Court has supplemental jurisdiction over Plaintiff's state‑law claims for abuse of process, tortious interference, and invasion of privacy under 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the federal claims.

5. Venue is proper in the District of Utah under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to these claims occurred within this district.

3

**PARTIES**

6. Plaintiff Ryan Lee is a resident of Utah County, Utah.

7. Defendant CAPITAL ONE BANK (USA), N.A. is a national banking association and the furnisher of the tradeline at issue. It is authorized to conduct business nationwide and regularly furnishes data to consumer reporting agencies. Its failure to investigate and accurately update Plaintiff's credit file after certified disputes gives rise to claims under the Fair Credit Reporting Act.

8. Defendant JOHNSON MARK LLC is a Utah-based debt collection law firm engaged in consumer debt enforcement. Further, Defendant Johnson Mark LLC is a "debt collector" under § 1692a(6) It acted on behalf of Capital One, N.A. in filing a debt collection lawsuit, and prepared and submitted an affidavit of service that Plaintiff alleges to be false and procedurally abusive, in violation of the Fair Debt Collection Practices Act.

9. Defendant ABC LEGAL SERVICES        is a nationwide process serving company that participated in attempting and certifying service at a residence Plaintiff had expressly disclaimed. Despite direct notice of the incorrect address, ABC Legal submitted a sworn affidavit stating Plaintiff was properly served—resulting in significant legal and reputational harm.

4

## FACTUAL ALLEGATIONS

### *Credit-Report Discovery*

10. According to Plaintiff's credit report obtained in late May 2025, Defendants have been negatively reporting the subject account as "charged off" since October 2024, with the last payment also listed as occurring in October 2024—suggesting the account was charged off in the same month a payment was allegedly received. Plaintiff never received any notice of delinquency or charge-off prior to this reporting, and a review of Plaintiff's bank records shows no payment to Capital One during that time, raising broader concerns about the accuracy and integrity of the tradeline itself.

### *Initial Address Dispute & Service Timeline*

11. On or about May 9, 2025, Defendant Capital One Bank caused a summons to be issued to ▨▨▨▨▨▨▨▨▨▨▨ a property at which Plaintiff has not resided in at least five years, if ever, which he had expressly disclaimed in writing. This was the first time Plaintiff became aware of any derogatory remark on his credit report.

12. On or about May 19, 2025, while juggling an incredibly busy work season, Plaintiff didn't have time to investigate the document his ex-spouse said to have received at her address, but the Plaintiff confirmed with the Utah District Court clerk that no complaint had been filed and reasonably understood the matter to have been withdrawn. Although he began investigating his credit records at that point, ongoing business obligations delayed his review.

13. On or about May 30, 2025, Plaintiff formally disputed his credit reporting with Experian, Equifax, and TransUnion concerning the inclusion of ▨▨▨▨▨ as his address.

Equifax credit report identifies Capital One Bank (USA), N.A. as the furnisher of the tradeline at issue. Experian and TransUnion list only "Capital One," which Plaintiff understands—based on credit industry conventions—to refer to the same entity.

14. On or about June 2, 2025, Plaintiff filed his first CFPB complaint against Defendant Capital One showing documents and communications confirming the disputing of the account and its errors, including furnishing his correct addresses as part of the complaint, which Plaintiff understands to have been sent to the Defendant (redacted for privacy).

*Subsequent Service Attempts & False Affidavit*

15. On or about June 6, 2025 (afternoon), Plaintiff's ex-spouse received an email from an alleged process server, Defendant ABC Legal Services (ABC), advising that someone would soon attempt to serve legal documents on Plaintiff at her residence. The ex-spouse promptly forwarded it to Plaintiff, who then used the ABC website contact form to inform them that ▨▨▨▨▨▨ was not authorized for service and demanded they cease all further attempts at that address.

16. On or about June 6, 2025 (evening), an individual acting on Defendants' behalf taped legal notice to the door of Plaintiff's ex-spouse home, at the address Plaintiff specifically stated to the Defendants to be unauthorized for service or any other contact regarding Plaintiff.

17. On or about June 7, 2025, Defendants ABC emailed "▨▨▨▨▨▨▨▨" which is Plaintiff's ex-spouse's account—confirming the attempted delivery of legal documents for Plaintiff.

6

18. On or about June 7, 2025, Plaintiff filed another CFPB complaint—naming Defendant ABC—for improper service and invasion of privacy by revealing alleged debt information, including account identifiers and balance details, to a third party without Plaintiff's consent.

19. On or about June 10, 2025, Plaintiff submitted a comprehensive dispute to Experian, Equifax, and TransUnion ("CRA") challenging all information related to the Capital One tradeline, ensuring both Capital One and the CRAs were on formal notice with his correct address and to investigate and correct accordingly.

20. On or about June 18, 2025, the CFPB referred the June 7 complaint against ABC Services to the Federal Trade Commission for further investigation. Shortly thereafter, I received mailed notice at Plaintiff's correct address with results of the June 10 credit‑report disputes—demonstrating that Capital One had validly acknowledged and used the Plaintiff's proper address, signaling that Capital One had received valid acknowledgement of the correct address.

21. On or about June 30, 2025, despite Plaintiff's notice of the wrong address for service and unauthorized third-party for any service, the Defendant, ABC, by process-server nonetheless served documents at Plaintiff's ex-spouse's residence, as confirmed by the ex-spouse, ▨▨▨.

22. On or about July 1, 2025, 2:11 p.m., Defendant, ABC, by a process-server signed an affidavit falsely certifying that:

    a. Service occurred on July 1, 2025 (when in fact only an attempted service was made on June 30, 2025);

7

    b.   Documents were served on Plaintiff's "spouse"; and

    c.   The recipient confirmed Plaintiff's residency at the address.

23. Further, the server-sworn affidavit was filed with the 4th District Court of Utah on July 2, 2025 at 4:45 p.m.—less than 32 hours after Plaintiff filed a CFPB portal complaint against Capital One on July 1, 2025. This overnight turnaround was not a "good faith cure" but a deliberate rush to shorten Plaintiff's response window and secure a default-judgment leverage point.

*Retaliatory Abuse of Process*

24. Defendants signed the false affidavit on July 1, 2025 and filed it with the court on July 2, 2025—less than thirty days after Plaintiff's June 2, 2025 CFPB complaint and June 10, 2025 CRA dispute—giving rise to a plausible inference of retaliatory intent.

25. The affidavit is stamped "2:11 p.m., July 1, 2025"—just two hours after CFPB forwarded the June 7 complaint to Capital One at 12:07 p.m.—showing it was filed with the intent to force a default judgment before it was realized. Once the court enters a default judgment, Plaintiff would be barred from contesting the underlying facts, introducing evidence (including proof of the CFPB/CRA disputes), or requesting relief.

26. On or about July 8, 2025, Plaintiff independently discovered the existence of a state court lawsuit filed in Utah District Court. That action was initiated based on a sworn affidavit of service that Plaintiff never received. Plaintiff promptly filed a Motion to Quash, asserting that service was attempted at an address that had been expressly disclaimed and was known to be incorrect. That motion remains pending as of the date of this filing. Although the case was filed under the name of Capital One, N.A., no documentation has

been produced to establish that the account was ever assigned, transferred, or sold by Capital One Bank (USA), N.A. to Capital One, N.A., nor was such documentation included with the state court complaint. This raises serious questions about standing and the legitimacy of the state court action.

    a. If no such assignment exists, then Capital One, N.A. acted without standing in initiating the lawsuit, and Johnson Mark LLC facilitated this through the use of a sworn affidavit representing valid service at an address previously disclaimed by Plaintiff.

27. In opposing Plaintiff's Motion to Quash, Defendants cited the false July 1 affidavit as proof that Plaintiff "was properly served," thereby seeking to invalidate his contemporaneous regulatory filings.  In the same vein, in their opposition to the motion to quash, Defendants admit that, ". . .  recognizing that the requirements for service of process in Rule 4(d)(1)(A) may not be met in this instance . . ." and then demand the state court order Plaintiff to notify the court and them of his current address. Exhibit D.

28. By misrepresenting that Plaintiff had confirmed residency and been properly served, Defendants intended to undermine the credibility of his July 1 complaints to the CFPB, FTC, and OPC—each of which expressly challenged the June 30 service as improper and false—and to jeopardize both his federal claims and his administrative remedies.

*Constructive Harm & Systemic Risk*

29. These procedural defects caused Plaintiff direct harm, including interference with refinancing efforts, blocked SBA business funding, and reputational damage, all tied to the continuing inaccurate reporting and legal enforcement actions. Plaintiff was in the

midst of refinancing his home; however while Plaintiff did not finalize loan applications until after learning of the tradeline, he abandoned the planned efforts to refinance his home—thereby risking his $62,000 down-payment—and Plaintiff further halted pursuit of SBA financing for a $500,000 acquisition opportunity upon learning of the unresolved charge-off entry. But-for the continued presence of that tradeline and related reporting errors, Plaintiff would have:

 a. Refinanced his residence in May 2025 to preserve his down-payment;

 b. Obtained SBA financing for a $500,000 acquisition; and

 c. Secured seller-finance refinance of the acquired business.

30. Plaintiff expects to support these allegations through records, lender communications, and other admissions or documentation obtained during the course of litigation.

31. More importantly, had Plaintiff not intervened in the faulty service and attempts to push it through, the default judgment would have become final on fabricated grounds, triggering:

 a. Additional derogatory tradelines;

 b. A public record of judgment;

 c. Collection leverage and potential garnishment; and

 d. Broader collateral impacts on credit and lending that would further impede his business and professional opportunities.

32. On information and belief, these actions by Defendants—Capital One, Johnson Mark LLC, and ABC process server—may have a practice of getting default judgments by using bad service tactics. By serving outdated or disputed addresses, then quickly filing affidavits claiming proper service, they create a situation where people don't even know they've been sued until after the deadline has passed. All three benefit in that Capital One gets a fast judgment, the law firm avoids opposition, and the process server gets paid. This seems less like a mistake and more like a strategy that takes advantage of the system.

*Pre-Litigation Resolution Efforts*

33. On or about July 9 and July 17, 2025, Plaintiff issued pre-suit demand letters to Defendants requesting withdrawal of the affidavit and correction of the tradeline (copies to be produced in discovery); Defendants did not meaningfully respond.

34. To Plaintiff's knowledge, no communication regarding this debt was received by him prior to July 8, 2025. Although Defendants' process-server attempted service around May 10, 2025 and June 30th, 2025 at Plaintiff's ex-spouse's address, those attempted hand-offs of formal court pleadings neither constituted service on Plaintiff nor 'communications' under 15 U.S.C. § 1692g(a) (see § 1692g(d)).

35. On July 8, 2025, Plaintiff first became aware of the underlying state-court action when he called the court and obtained copies of the Summons and Affidavit of Service filed by Defendant Johnson Mark LLC. Defendant did not mail any required validation or debt-verification notice to Plaintiff at his last known address (as updated by Plaintiff's

June 10, 2025 written notice) within five days thereafter, in violation of 15 U.S.C. § 1692g(a).

### COUNT I — FAIR DEBT COLLECTION PRACTICES ACT
### (15 U.S.C. § 1692d–g)

36. Plaintiff realleges each and every factual allegation by paragraph above as if set forth here.

37. Plaintiff alleges that Johnson Mark LLC's collection tactics were abusive, deceptive, and procedurally improper, specifically:

   a. Validation Notice (§ 1692g): No written validation notice was mailed within five days of the first actual communication, in violation of § 1692g(a) (¶ C.16;   F.23; Ex. C).

   b. Misrepresentation (§ 1692e): Defendant Johnson Mark LLC filed a sworn affidavit dated July 1, 2025—submitted July 2—misrepresenting both the service date and the identity of the recipient (¶ C.13(a)–(c); Ex. A).

   c. Unfair Means (§ 1692f): Back-dating that affidavit and naming an unauthorized recipient to manufacture "proper" service and trigger a 21-day response clock (¶ C.13;   D.14–15; Ex. B)

   d. Harassment (§ 1692d): Taping notices to the door of Plaintiff's ex-spouse's home, after Plaintiff's written address objection (¶ B.2;   C.7–8; Ex. A).

   e. Lack of Standing / Unverified Ownership: Defendant initiated collection on behalf of Capital One, N.A. without providing or disclosing any documentation

confirming that Capital One, N.A. legally owned the debt—a misrepresentation of authority.

38. Because of these actions, Plaintiff is entitled to actual and statutory damages under 15 U.S.C. § 1692k; costs and reasonable attorney's fees; declaratory relief that Defendant's conduct violated the FDCPA; and injunctive relief prohibiting any further violations.

## COUNT II — FAIR CREDIT REPORTING ACT (15 U.S.C. § 1681s-2(b))

1. Plaintiff realleges each and every factual allegation by paragraph above as if set forth here.

2. Capital One Bank (USA), N.A. is the identified furnisher of the tradeline at issue. Although Plaintiff's certified disputes—via a June 2 CFPB complaint and June 10 CRA letters—prompted a generic furnisher response, including automated coding to affirm the charge-off status, Capital One failed to conduct a reasonable investigation beyond confirming historical status codes. Specifically, Capital One did not verify whether Plaintiff had been properly notified, whether the account was in dispute at the time of charge-off reporting, or whether the entity pursuing legal enforcement had lawful ownership of the debt. The account remained inaccurately reported as a "Charge-Off" without being marked as disputed, and no documentation has been provided showing that Capital One Bank (USA), N.A. ever transferred, sold, or assigned the account to Capital One, N.A., despite legal enforcement being pursued in the latter's name.

Inconsistent and Unauthorized Furnishing: Capital One Bank (USA), N.A. has continued to furnish tradeline data to consumer reporting agencies despite no documentation of

ownership or assignment of the account. Meanwhile, Capital One, N.A.—a different legal entity—initiated legal enforcement in state court, claiming entitlement to the same debt. No notice of transfer, sale, or assignment was provided to Plaintiff, and no public or verified record exists demonstrating that Capital One Bank (USA), N.A. retained ownership of the account. Furnishing a tradeline after relinquishing ownership, or without confirming the current status of the account, constitutes a violation of the duty to conduct a reasonable investigation and report only accurate and verifiable information under 15 U.S.C. § 1681s-2(b). Defendant's failure to: (a) conduct a reasonable investigation, (b) mark the tradeline as disputed, and (c) verify account ownership before reporting, constitutes a violation of its duties under § 1681s-2(b).

3. Defendant's failure to: (a) conduct a reasonable investigation, (b) mark the tradeline as disputed, and (c) verify account ownership before reporting, constitutes a violation of its duties under § 1681s-2(b).

4. Defendant's failure to: (a) conduct a reasonable investigation, (b) mark the tradeline as disputed, and (c) verify account ownership before reporting, constitutes a violation of its duties under § 1681s-2(b).

5. As a result, Plaintiff suffered credit harm, was denied SBA funding and refinancing, and lost over $60,000 in equity. Plaintiff seeks statutory and actual damages under 15 U.S.C. § 1681n, an injunction ordering deletion or correction of the "Charge-Off" tradeline, and reasonable attorney's fees and costs.

15

6.  Plaintiff notified Capital One of errors via a June 2 CFPB complaint and June 10 CRA disputes, yet the "Charge-Off" entry remains uncorrected (¶ B.5;   C.10;   A). That failure blocked his refinancing and SBA funding.

7.  Because of Defendant/s reporting or omissions, Plaintiff is entitled to statutory and actual damages under 15 U.S.C. § 1681n, an injunction ordering Capital One to 'delete' the "Charge-Off" tradeline from all credit reports and credit-reporting agency files, an order for correction of any remaining inaccurate or unverifiable information and reasonable attorney's fees and costs.

## COUNT III — TORTIOUS INTERFERENCE AND RETALIATORY ABUSE OF PROCESS

8. Plaintiff realleges each and every factual allegation by paragraph above as if set forth here

9. Plaintiff engaged in protected activity when he filed a complaint with the Consumer Financial Protection Bureau (CFPB) on June 2, 2025 (¶ B.5), followed by formal disputes to the credit reporting agencies on June 10, 2025 (¶ C.10).

10. Defendants were aware of these filings at the time they prepared the July 1, 2025 Affidavit of Service (¶ D.14–15; Ex. A). Within 30 days of Plaintiff's protected activity, Defendants intensified improper service attempts (¶ C.6–8) and filed a back-dated, false affidavit—stamped 2:11 p.m. on July 1, 2025—just hours after Plaintiff's escalation to the CFPB, strongly indicating retaliatory intent (¶ C.13;    D.15–17; Ex. A; Ex. D). Defendants acted with intent to coerce payment, avoid responding to federal regulatory inquiries, and prevent Plaintiff from exercising his legal rights. The use of court process for this purpose—absent valid ownership documentation or standing—constitutes tortious interference and retaliatory abuse of process.

11. As a direct result of Defendant/s acts, Plaintiff lost valuable refinancing and SBA-loan opportunities and suffered both reputational and emotional harm (¶ E.19–20). Plaintiff seeks compensatory and punitive damages for tortious interference and retaliatory abuse of process, injunctive relief voiding any deadlines or default entries based on the false affidavit, and an award of reasonable attorney's fees and costs.

16

**COUNT IV — INVASION OF PRIVACY AND UNAUTHORIZED DISCLOSURE**

12. Plaintiff realleges each and every factual allegation by paragraph above as if set forth here

13. Plaintiff alleges that Defendants publicly disclosed his private debt information and residential location without consent, intruding on his and his children's privacy.

14. Defendant/s directly or in agency made numerous unauthorized disclosure to third parties. Defendants left service documents containing Plaintiff's debt balance (whether accurate or disputed) and account number with his ex-spouse. (¶ C.6–9; Ex. B; Ex. C.)

15. Defendants caused a public court filing to identify a private residence—Plaintiff's ex-spouse's home, where his minor children live—as the service location, thereby exposing the family's address in the court record. (¶ B.2;   C.6; Ex. A.)

16. These disclosures were highly offensive to a reasonable person and caused emotional distress, and co-parenting disruption to Plaintiff. (¶ C.9;   E.19–20.)

17. From Defendant/s wrongful acts, Plaintiff was damaged and is entitled to actual and compensatory damages for emotional distress and privacy invasion; Injunctive relief prohibiting any further unauthorized disclosures or public identification of private residences; and any reasonable attorney's fees and costs as proved at trial.

**PRAYER OF RELIEF**

WHEREFORE, Plaintiff respectfully asks the Court to:

18. Award all damages allowed by law, including actual, statutory, and punitive damages;

19. Order Defendants to correct or remove inaccurate credit reporting and stop any further attempts to collect based on false or improper service;

20. Grant injunctive relief to prevent further harm, including blocking any deadlines, defaults, or disclosures based on improper actions;

21. Award reasonable attorney's fees, court costs, and any other expenses incurred; and

22. Grant any other relief the Court finds fair and appropriate under the circumstances.

DATED this 28th day of July 2025.

/s/ Ryan Lee

Ryan Lee
Pro Se Plaintiff
PO Box 133
Lehi, UT 84043
ryan.c.lee.1026@gmail.com

18

**Exhibit Index**

| Exhibit | Description |
| --- | --- |
| A | Original Summons & Affidavit of Service |
| B | Motion to Quash Service of Summons |
| C | Attachments to Motion to Quash (CFPB/FTC complaints, emails, timeline) |
| D | Defendant's Opposition to Motion to Quash |
| E | Plaintiff's Reply in Support of Motion to Quash (Support Letter) |